## JACK EDWARDS v. STATE.

No. A-10652.    Feb. 4, 1947.
(177 P. 2d 143.)

John L. Ward, of Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Owen J. Watts, Asst. Atty. Gen., for defendant in error.

BRETT, J. The defendant, Jack Edwards, was charged in the court of common pleas of Tulsa county with the offense of unlawfully having in his possession, certain intoxicating liquor, to wit: Two pints of whisky, with the intent to barter, sell, etc., in violation of the prohibitory laws. The offense is alleged to have occurred on January 25, 1945.

To the information, the defendant filed a motion to suppress the evidence, alleging an unlawful search and seizure. After a hearing on the motion by the court on April 2, 1945, it was overruled. The defendant thereupon waived a jury, the case was tried, and the defendant convicted and sentenced to pay a fine of $100 and to serve 60 days in the county jail.

The facts upon which the foregoing was based are as follows: On January 25, 1945, two federal narcotic officers, together with two deputy sheriffs, M. E. Gibson and Grover Wagoner, went to the defendant's residence, under the authority of a search warrant authorizing a search for

marihuana only. The search of the premises was fruitless. As they were coming out of the house, they observed an automobile parked in the street, along the curb, and in front of the house. The record is not clear as to what the federal narcotics officers said to the defendant about seaching the automobile. In fact, Mr. Grover, the only witness who testified concerning what was said by the federal officers about waiver of consent on the part of the defendant, said: "I don't know what they told him."

The federal officers were not called as witnesses. The state officers admitted that they said nothing to the defendant relative to searching the automobile.

The state relies upon the fact that the defendant replied to whatever the federal officers said to him in regard to the searching of his automobile: "Why sure—look it over; you won't find anything in there." Also that the defendant unlocked the car and the turtleback.

The record is clear that no one saw any whisky in the car before the search was commenced. It is not clear who opened the doors, though it does show that they were opened and the federal officers were searching when Mr. Glover and Mr. Gibson approached the automobile. The officers found no marihuana but they did find two pints of whisky. Mr. Gibson testified, in this connection, as follows: "I walked up to the car. The doors were open and the federal men were looking through it and there was one bottle of whisky and I picked it up and reached under the seat and pulled out another one." His testimony further showed that as he approached the automobile, he could see one pint of whisky lying on the floor-board of the car. The foregoing statement of the evidence contains all that is pertinent to a decision on the issues herein involved.

Summarized, the contentions of the parties are set forth in the following language:

The defendant contends that the search was made in violation of his constitutional rights, and, that the court should have sustained his motion to suppress.

The state contends that, by his words and his actions, the defendant waived his constitutional rights and gave his consent to the officers to search his automobile without a warrant; and,

That the search was voluntarily consented to, and, when the pint of whisky was found on the floor-board of the car, a misdemeanor was thereby committed in the officers' presence, and no warrant was needed.

Upon these facts and these issues, the decision of this court must turn.

The right of search and seizure is in derogation of the guaranties of the Constitution of the United States, the State of Oklahoma, and against the invasion of the privacy of the people. This guaranty has long been extended to include automobiles. Suffice it to say that these guaranties were born of the pre-revolution days, when the homes of the people were invaded by the British Red Coats and searched with or without the slightest reason, provocation, or authority of law. It was from such experiences that the constitutional barriers against its wrongful use have been erected. But the necessities of the law and its effective enforcement required that officers of the law be extended the right to search and seize. This right, in proper cases and when properly authorized and executed, was found to be an essential adjunct to proper protection to the public against law violators. It was recognized as an essential instrument in the detection and suppression of crime, and

in the disclosure and seizure of contraband and the instruments of crime.

The people recognized that in granting the right to search and seize, they were doing so in derogation of one of their most sacred rights. To prevent abuses, its use was permitted under strict prescriptions of law. The barriers, which the people erected to prevent its misuse, are, the 4th Amendment to the United States Constitution, which reads, in part, as follows:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, * * *."

Article 2, section 30, of the Bill of Rights of the Constitution of the State of Oklahoma, reads in part, as follows:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches or seizures shall not be violated, * * *."

These provisions, this court has held, secure the individual in his person, his home, and his property, from invasion through unbridled and unrestrained executive or administrative will. Gore v. State, 24 Okla. Cr. 394, 218 P. 545; Best v. State, 32 Okla. Cr. 89, 240 P. 159; Keith v. State, 30 Okla. Cr. 168, 235 P. 631; State v. Coburn, 68 Okla. Cr. 67, 95 P. 2d 670.

Moreover, it has also been held that the protection against unlawful search and seizure extends to all equally, those justly suspected or accused, as well as to the innocent. Wallace v. State, 42 Okla. Cr. 143, 275 P. 354.

The constitutional provisions in the Bill of Rights do not prevent all searches and seizures but only those that are unreasonable and in violation of law. However, it is

not permissible under such provisions to whittle away the substantial guaranties, limiting the use of a search warrant, and, thereby, permit an abuse of its use. Abbott v. State, 30 Okla. Cr. 98, 235 P. 550. To prevent the abuse of the right to search and seize, the provisions, under which the right is created, must be strictly construed. However, it is not to be so strictly construed as to thwart the reasonable and proper efforts of officers of the law to detect and prevent crime. These principles apply to searches made with or without a warrant, and to automobiles, as well as private dwellings. Strong v. State, 42 Okla. Cr. 114, 274 P. 890; Perry v. State, 72 Okla. Cr. 149, 114 P. 185.

One suspected of committing crime, under the law, has a right to demand that the officers obtain a search warrant before a search is made of either his premises or his automobile. This constitutional immunity, however, is a personal privilege and may be waived. Short v. State, 48 Okla. Cr. 320, 290 P. 934; Cook v. State, 44 Okla. Cr. 226, 280 P. 626; Baker v. State, 35 Okla. Cr. 62, 248 P. 846; Gaines v. State, 28 Okla. Cr. 353. 230 P. 946; Boswell v. State, 26 Okla. Cr. 116, 222 P. 707; Hurst v. State, 25 Okla. Cr. 102, 219 P. 151.

The first question involved in the case at bar is: "Do the facts herein involved make out a case of waiver on the part of the defendant." The officers had no search warrant to search the defendant's car. Therefore, they were without right so to do unless the defendant, by words or actions, waived his right to require a search warrant, which he may do.

In cases where a waiver is claimed to have been made, if statements are made by federal officers, in the presence of state officers, as a predicate for a search, it is the duty of the state officers, who seek to make a case

for the state on such a search, to at least hear what was said, to obtain the accused's consent for the search, especially when the federal officers are not called as witnesses. In the absence of such showing, the defendant's words and acts could not be voluntary, intentional, or sufficient to constitute an invitation to search. To assume so would be to read into the record, facts not proved. It is fundamental that a waiver must be proved by the party alleging it, 63 C.J. 309. This proof must be clear and convincing, that the waiver was a free and voluntary act, as was said by Judge Barefoot in Pritchett v. State, 78 Okla. Cr. 67, 143 P. 2d 622, 623, and by Judge Jones in Dawson v. State, 83 Okla. Cr. 263, 175 P. 2d 368. In the absence of a showing as to what was said to the defendant, before the search commenced, we are forced to conclude that the defendant was not placed in a position by the officers to knowingly, intentionally, freely, and voluntarily waive his right to demand a search warrant. His words, "look it over; you won't find anything", and his act of unlocking the car, constituted nothing more than an expression that he would not resist the officers' exercise of authority. Therefore, the facts in this case are not sufficient to make out a case of voluntary consent and to constitute an invitation to search his car.

The following cases support the foregoing position: Prichett v. State, supa, wherein the defendant said, "you don't have to have a search warrant; just go ahead"; Smith v. State, 34 Okla. Cr. 434, 246 P. 1109, 1110, wherein, officers armed with a warrant, advised defendant they wanted to search her premises, to which she said, "Go ahead and search; there is no whisky here." In both of the foregoing cases, the court said that, such a state-

ment "is not to be construed as an invitation to search * * * but rather as a statement of the intention not to resist search, under the warrant." This rule, laid down in the cases supra, is supported by the following cases: Denton v. State, 62 Okla. Cr. 8, 79 P. 2d 135, 139, an able opinion by Judge Barefoot, wherein, the defendant's purported waiver was based upon the statement, "that is fine and dandy, come right ahead"; Mullins v. State, 75 Okla. Cr. 417, 133 P. 2d 239; the latest case from this court, Dawson v. State, supra; Perry v. State, 72 Okla. Cr. 149, 114 P. 2d 185, which is a case substantially similar to the case at bar and in which Judge Jones cites, with approval, Evans v. State, 34 Okla. Cr. 173, 245 P. 912, wherein the court said: "A private conveyance may not be searched on suspicion without a search warrant." He also cited, with approval, Combest v. State, 51 Okla. Cr. 38, 299 P. 920, 921, wherein, the court said [72 Okla. Cr. 119, 114 P. 2d 186]: "It was shown that officers had a search warrant for the search of certain premises and searched an automobile parked on the street in front of the described premises." The court stated [51 Okla. Cr. 38, 299 P. 921]: "It is also argued that the search of the automobile sitting in front of defendant's house was unlawful and evidence obtained thereby inadmissible. With this contention we are also in accord. The officers had no warrant to search the automobile and the search was unlawful. Smith v. State [48 Okla. Cr. 115], 289 P. 792; Bowen v. State [50 Okla. Cr. 36], 295 P. 623." Under these cases, we are of the opinion the search of the car, from the beginning, was without authority of law.

The state's contention that, when Officer Gibson walked up to the car and saw the pint of whisky on the

floorboard, that the defendant had thereby committed a misdemeanor in the presence of the officers and was subject to arrest, is without merit. The authorities cited by the state in support of that contention are not in point. The cases relied on by the state are cases wherein the officers saw the whisky or cartons which were labeled "whisky", through the window in plain sight and the search followed. Certainly, an officer has a right to search an automobile when he sees whisky through the window or can ascertain, through one of his senses, that a misdemeanor is actually being committed in his presence. In the cases relied upon by the state, the discovery of the misdemeanor was made, independent of a search, and not incident to a search without a warrant. No such state of facts prevails in the case at bar; here, the officers did not know of the two pints of whisky until after the search was begun. The discovery of the whisky was, therefore, incident to an unlawful search and not independent of and precedent to the search. The search of the automobile in the case at bar, being made without a warrant, was unlawful and being unlawful from the beginning, is not made lawful by the discovery of the two pints of whisky. 56 C.J. 1184; Dean v. State, 37 Okla. Cr. 396, 258 P. 812; Byars v. United States, 273 U. S. 28, 47 S. Ct. 248, 71 L. Ed. 520. The search must be justified by the steps that precede it, United States v. Two Soaking Units, D.C., 44 F. 2d 650. These steps must be lawful in their entirety; Jokosh v. State, 181 Wis. 160, 193 N.W. 976. This court has held that the search of a car by an officer without a warrant or knowledge that the car contained whisky, is illegal and that the evidence so obtained is inadmissible. Strong v. State, 42 Okla. Cr. 114, 274 P. 890; State v. Coburn, 68 Okla.

Cr. 67, 94 P. 2d 670; Perry v. State, 72 Okla. Cr. 149, 114 P. 2d 185.

We are of the opinion that the officers in the case at bar did not know that there was whisky in the automobile until after the search had commenced. This being true, the search already commenced, without a warrant and not being supported by a waiver, cannot be justified on the contention that a misdemeanor had been committed in the presence of the officers when the officer saw, through the open door, which had been opened by the federal officers making the search, the one pint of whisky lying on the floor-board of the car.

The record in this case, being insufficient to support a valid search of the defendant's car and seizure of its contents, the trial court should have sustained the defendant's motion to suppress. The case is therefore reversed, with directions to discharge the defendant.

BAREFOOT, P. J., and JONES, J., concur.