## HAWKINS et al. v. UNITED STATES.
### Nos. 9353, 9354.

United States Court of Appeals
District of Columbia.

Argued Nov. 13, 1946.

Decided Dec. 30, 1946.

Messrs. Kenneth D. Wood and Emory B. Smith, both of Washington, D. C., with whom Messrs. Robert I. Miller and Joseph A. McMenamin, both of Washington, D. C., were on the brief, for appellants.

Mr. Sidney S. Sachs, Assistant United States Attorney, of Washington, D. C., with whom Messrs. Edward M. Curran, United States Attorney at the time the brief was filed, and Charles B. Murray, Assistant United States Attorney, both of Washington, D. C., were on the brief, for appellee.

Before EDGERTON, CLARK, and PRETTYMAN, Associate Justices.

EDGERTON, Associate Justice.

While appellants were carrying out a joint plan to rob a Safeway store on First Street in Washington, D. C., appellant Hawkins wantonly killed a clerk. Both appellants have been convicted of murder in the first degree and sentenced to death.

The guilt of both is exceptionally clear. It was proved by eyewitnesses and by a series of detailed confessions. We have carefully examined the whole record and find no reversible error. The only question which merits discussion relates to the confessions. Appellants urge that these were extracted by threats or promises concerning their immediate relatives and were therefore involuntary.

The court duly heard, in the absence of the jury, testimony as to the circumstances in which the confessions were obtained. Appellants testified in substance that the police threatened to hold their relatives until appellants confessed. The police admitted that they informed appellant Prout that his relatives were being questioned. They testified that they gave Prout this information in response to his inquiries, and that they made no threats or prom-

ises to either appellant. However, a policeman admitted that his purpose in giving Prout the information had been "to work on Prout's sympathies for his innocent relatives to bring him around to the point of talking." But for the admirable fairness of the United States Attorney and his assistant Mr. Murray this disclosure, which the policeman had made to them while they were preparing for trial, would not have got into the record.

So far as the stories of appellants and the police were in conflict, the trial judge believed the police. He therefore allowed the confessions, together with evidence as to how they were obtained, to go to the jury. Testimony more or less similar to the foregoing was repeated in the jury's presence. The police denied to the jury, as they had in the absence of the jury, that any threats or promises were made.

But a striking feature of the case is that appellants, in their direct testimony before the jury, made no attack upon their signed confessions and did not even mention them, though they were then in evidence. Both appellants ignored them until government counsel inquired about them on cross-examination. Appellant Prout then testified that the police told him: "Well, we got your people, you better tell us something or else they will be *questioned* just like you have been * * *" [Italics supplied.] Prout did not, even on cross-examination, intimate that the police threatened to hold his relatives until he confessed. He explained his signing the confession by saying that he became confused and exhausted and went to sleep, that a policeman woke him up and asked him to sign a paper, and that he signed it, but that he did not "answer the questions" or "know anything about the questions at all." Not until his re-direct examination, when the words were put into his mouth by his counsel, did he say that he signed the confession because the police told him they had his mother, stepfather and uncle locked up. Appellant Hawkins, on cross-examination, explained his signing the confession by saying he was exhausted from questioning, was tired and sleepy, and was told that he might be held for a couple of weeks. Like Prout, Hawkins did not, even on cross-examination, intimate that the police threatened to hold his relatives until he confessed. On re-direct examination his counsel asked him if the officers did not tell him they had his family locked up, and Hawkins replied that they told him they were *going* to lock his family up. Counsel then added and Hawkins adopted the phrase "if you didn't sign."

■ On this appeal it is contended, also, that appellants were exhausted by some hours of questioning when they confessed. The record does not support this contention. According to the police, both Prout and Hawkins made their first confessions, which were oral, after being questioned 25 minutes or less. Appellants denied making these particular confessions. But their counsel conceded at the trial, expressly with respect to Hawkins and by implication with respect to Prout, that the only basis for an attack upon confessions which they unquestionably did make was the point concerning their families. Counsel did not even ask that the jury be instructed regarding the effect which long and continuous questioning might have upon the voluntariness of a confession. There was hardly enough evidence of such questioning to warrant such an instruction. Certainly the court did not err in not volunteering one. The court instructed the jury, in general terms to which no objection has been made, to decide whether the confessions were voluntary and to disregard them if it believed that they were obtained by any sort of pressure or inducement.

■ We think appellants' rights were fully protected. Whether the confessions were voluntary or were obtained by pressure or inducement was for the court and jury to decide. The policeman's admitted purpose in making his statement to Prout is evidence, but it is not conclusive evidence, that the statement conveyed an implied threat to hold Prout's relatives. Even if such a threat was conveyed, it did not make the subsequent confession "involuntary" unless there was a causal con-

nection between the threat and the confession. Causal connection between some kinds of pressure and subsequent confessions is obviously probable and should be assumed. But it is not obviously probable that a man who confesses a capital crime does so in order to expedite release of relatives who are not implicated or accused, even if he has been told that this result will follow. It is less probable in the case of these appellants, one of whom had gone through high school and the other through the ninth grade, than in the case of an illiterate defendant. It is the more improbable because of the variety of explanations of their confessions which the appellants offered. The policeman's statement to Prout, in view of its purpose, was highly improper, but mere impropriety which has nothing to do with the making of a confession does not preclude its use.

Affirmed.