FRANCIS RAY WALKER v. STATE.

No. A-10963.　March 30, 1949.

(205 P. 2d 335.)

John Howard Payne and John C. Head, both of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., and Warren H. Edwards, Co. Atty., Oklahoma County, of Oklahoma City, for defendant in error.

BAREFOOT, J. Defendant, Francis Ray Walker, was charged in the district court of Oklahoma county with the crime of burglary; was tried, convicted by a jury, sentenced to a term of two years in the State Penitentiary by the court, and has appealed.

Three assignments of error are presented:

"(1) The court erred in permitting hearsay evidence of identification of the Shrine tickets.

"(2) The court erred in admitting evidence of the illegal searches and each of them and failing to suppress same.

"(3) The so-called 'confession' was inadmissible as defendant was not advised of his constitutional rights, he had never been taken before a committing magistrate, and same cannot be said to have been voluntary."

We deem it necessary to give a short statement of the evidence.

Defendant, a boy 20 years of age and a resident of Oklahoma City, was charged with the crime of second degree burglary in the district court of Oklahoma county. He was charged with burglarizing a service station located at Thirteenth and Robinson, Oklahoma City, on the night of October 21, 1946, by breaking a window and entering therein, and stealing $52.25 in money, one Remington electric razor, one bunch of keys, and 18 Shrine circus tickets, the personal property of Beam and Culbert Service Station.

At 1:30 in the morning of October 26, 1946, two members of the Oklahoma City police force were at a filling station, and saw a boy, the defendant, standing at a street corner at Sixteenth and Drexel. This is about two miles from where the burglary occurred. The officers questioned defendant and he informed them that he had taken the wrong bus, and had transferred to take a bus to his mother's home. The officers drove away, but in a few minutes returned for the reason they were not satisfied with the answers given them. Defendant was still at the bus stop, and was taken into custody without a warrant. He was searched and the officers found in his possession a small pen-type flashlight, a small pair of pliers, and a small screw driver. He was then taken to the city jail, and found to have $12 in money, and some keys. He was placed in jail and charged with loitering and investigation. On the following morning he was turned to city detectives Walker Casady and Gene Wells, who

questioned him concerning several recent burglaries in Oklahoma City. Detective Casady, after returning defendant to the city jail, took a key to defendant's apartment from the package or envelope in which his personal property had been placed. He, with another officer, then proceeded to the home of defendant and searched the premises, and found therein a book containing 18 Shrine circus tickets. No search warrant was procured by the officers before making the search. Detective Casady testified that he went up to the Mosque and learned that the Shrine circus tickets found in defendant's apartment had been issued to Frank Taylor, a member, and by telephone found that Frank Taylor had left these tickets at the Beam and Culbert Service Station, at Thirteenth and Robinson, and that they had been taken therefrom in the burglary on the night of October 21, 1946.

Detective Casady, Mark Bain and George Leech then took the defendant with them and returned to his apartment and conducted a second search, and found the electric razor. Defendant, when confronted with these facts, made a written statement or confession in which he acknowledged committing the burglary of the Beam and Culbert Service Station at Thirteenth and Robinson on the night of October 21, 1946, and taking the property hereinbefore described. He also told them of several other burglaries that he had theretofore committed.

At the trial of defendant, the court admitted that part of the statement or confession with reference to the burglary of the Beam and Culbert Service Station on the night of October 21, 1946, but was careful to eliminate reference to all other burglaries which defendant confessed to have committed. A full hearing of the facts surrounding the securing of the written confession from the defendant was had by the court out of the presence

of the jury, and all parts thereof pertaining to other acts were deleted therefrom before presenting to the jury that portion pertaining to the burglary on October 21, 1946. It may be stated that defendant's conviction in this case was based upon the confession which was presented and read to the jury.

We shall first discuss the second assignment of error.

Counsel for defendant cites many cases from this court to sustain the proposition that it was error to permit the introduction of evidence obtained by the search of defendant's apartment in view of the facts presented by the record. The Attorney General in his brief makes no attempt to answer the argument, and does not cite a single case to uphold his contention. that the search of defendant's apartment was a valid search under the law. The cases cited by defendant are: Miller v. State, 74 Okla. Cr. 104, 123 P. 2d 699; Patty v. State, 74 Okla. Cr. 322, 323, 125 P. 2d 784; Crim v. State, 78 Okla. Cr. 153, 145 P. 2d 444; Edwards v. State, 83 Okla. Cr. 340, 177 P. 2d. 143; Graham v. State, 86 Okla. Cr. 9, 184 P. 2d 984.

Mr. Casady, the police officer testifying for the state, on direct examination testified that when he first talked to defendant, defendant admitted to him the commission of the burglary, and defendant went with him to his apartment and agreed to his entering and searching the same. On cross-examination he admitted that when talking to defendant the first time, defendant denied his participation in the burglary. That he then went to the office and procured the key to defendant's apartment from the envelope where it had been placed by the policeman the night of defendant's arrest, and he and another police

officer went to the apartment and searched the same. They seized the Shrine circus tickets, and came back by the Shrine office, and then telephoned Mr. Taylor and the owners of the service station, and thereafter confronted the defendant with the facts obtained, and he then admitted the burglaries. This witness, with other officers, then took the defendant to his apartment, and seized the electric razor and keys. The defendant was taken to the places of the various burglaries, and he showed them how he had entered the different buildings, including the Beam and Culbert Service Station. After returning to the police station, the statement or confession was drawn up and signed by the defendant.

Defendant testified that the confession was made by reason of the fact that one of the police officers who had accompanied him to his apartment told him that if he did not confess, four burglary charges would be filed against him, and charges would also be filed against his wife; but if he confessed, only one charge would be filed against him. The officers denied having made any such statement, and testified that the confession was made voluntarily by defendant after being warned that any statement made by him could be used against him. The officers also testified that no cruel or unusual punishment was inflicted upon defendant, and he corroborated this testimony.

By reason of the search of defendant's apartment without securing a search warrant, we are of the opinion that the evidence secured was unlawful and the motion to suppress the same should have been sustained. The court seemed to take this view of the case, and upon objection by defendant, the county attorney did not introduce in evidence the property seized. However, the court permitted the witnesses to testify to the finding of the

different articles, and testimony that these identical articles had been taken when the service station was entered on the night of October 21, 1946. This, to our minds, had the same effect upon the minds of the jury as if the articles had been introduced in evidence. We are of the opinion that the search of the apartment of defendant, as revealed by the facts in this case, does not come within the rule of permission to search the person and immediate surroundings, where one has been placed under arrest; or within the rule that a misdemeanor has been committed in the presence of the arresting officer. Here the defendant had been arrested the night before. No charges had been ·preferred against him. He was only being held for loitering and for investigation. He was confined in jail. There was no excuse for the officers' failure to secure a valid search warrant, if they desired to search defendant's private apartment. He was entitled to this protection under the law, notwithstanding that it later appeared that he was guilty of the crime charged against him. The records of this court reveal that this defendant is a persistent violator of the law, as he has recently been convicted of the larceny of an automobile and sentenced to five years in the State Penitentiary, and that case was affirmed. Walker v. State, 89 Okla. Cr. 19, 204 P. 2d 552. Notwithstanding this, he is entitled to a fair and impartial trial, and we are of the opinion that this case should be reversed by reason of the error heretofore stated.

As to the admission of incompetent and hearsay evidence, this has reference to the testimony of the police officer that he talked with officers of the Mosque with reference to the Shrine circus tickets. No member of the Shrine testified in this case. We suggest that if this

case is retried, a member of that body who knows the facts be called to testify, and this error will not again appear.

The third error complained of is that the statement, or confession, was an involuntary statement and therefore inadmissible. Under the Federal practice as recently held by the Supreme Court of the United States, there is no question but that the statement would be held inadmissible for the reason that it was taken while defendant was under arrest and prior to his being taken before a magistrate and charges filed against him. McNabb v. U. S., 318 U. S. 332, 339, 63 S. Ct. 608, 87 L. Ed. 819, 823; Upshaw v. U. S., App. D. C., 168 F. 2d 167; Id., 335 U. S. 410, 69 S. Ct. 170, 93 L. Ed. —.

But under the rule adopted in this state and many other state courts, the holding of the trial court after a full and complete hearing in the absence of the jury that the statement was voluntary would be upheld. Fry v. State, 78 Okla. Cr. 299, 147 P. 2d 803; State v. Folkes, 174 Or. 568, 150 P. 2d 17; State v. Smith, 158 Kan. 645, 149 P. 2d 600; People v. Malinski, 292 N. Y. 360, 55 N. E. 2d 353; State v. Collett, Ohio App., 58 N. E. 2d 417; State v. Nagel, N. D., 28 N. W. 2d 665; State v. Ellis, 354 Mo. 998, 193 S. W. 2d 31, 37; Finley v. State, 153 Fla. 394, 14 So. 2d 844; State v. Browning, 206 Ark. 791, 178 S. W. 2d 77; Russell v. State, 196 Ga. 275, 26 S. E. 2d 528.

This case is reversed and remanded by reason of the unlawful search of defendant's apartment, as hereinbefore stated.

JONES, P. J., and BRETT, J., concur.